Our final case for today is Ani-Deng v. Jeffboat. Good morning, may it please the court, my name is Dustin White, I'm here representing Awok Ani-Deng v. Jeffboat. We come to you today on a negative summary judgment decision where the district court ruled that there was not a material issue of fact, not a genuine issue of fact for the trier fact to determine the discrimination claim. Title 7 as well as retaliation and 42 U.S.C. 1981 claim. Do you have any evidence in this record that anyone was permitted to notify the company after the close of business on the final day of the five days that they were interested in recall? Thank you for your question, I'm glad you asked that. We have the affidavit of Evelyn Miller who worked at Jeffboat as the HR representative and payroll administrator. During the time in question, during this case, gives what I consider an admission. She operates as a whistleblower, she's no longer the employee, but it's a whistleblower type... But did she specifically say that after close of business on the last day of the five day period, somebody was able to notify the company and they were included in a recall even though Ms. Annie Dung was not? She did not specifically say that in the affidavit. I think that's actually important because if all she's saying is you can do after hours, if it's within the five day period, that's different from our situation. I'm just having trouble seeing where... Actually I'm mystified that she didn't notify them earlier, but that's water under the bridge. I don't see where the evidence of disparate treatment is. Your Honor, I think what is important here is that Annie Dung complied with the collective bargaining agreement. There is nothing... But she didn't. I mean she didn't tell them in a timely manner that she was in... When people are laid off on a riff or on something, some of them go get a different job, maybe some of them decide to stay home and take care of their kids or whatever, people do different things. So just because you're invited to come back doesn't necessarily mean you want to. So the company can say, let us know within this period of time. This company seems to have gone to some trouble when she doesn't tell them her new address. They try phoning, they contact the husband, they do these things. So I don't see a story in their effort that suggests anything wrong. I just don't see where the people not in her protected class are treated better. I think you will find in the record where it was commonplace for Ms. Evelyn Miller as well as the union steward to contact those who were subject to recall. But they tried to contact her too and they eventually do through her husband. Yes. So there's no difference there, she gets contacted. And Ms. Annie Ding is a Sudanese refugee, she has absolutely zero formal education, speaks very limited English, that's why she had her husband call on her behalf. And he also translated for her during her disciplinary actions. But I think it's important, I'd like to emphasize that this 3.30 time period is an additional term to the collective bargaining agreement. As long as you at least leave a message on the fifth day, as Evelyn Miller says, who's the one that would take them? That just doesn't make any sense. I mean, when the company gives you a five day period, which strikes me as a reasonable thing, they could have given seven, they could have given something else. I don't see why it's inconsistent with the collective bargaining agreement to simply announce in a letter, you know, this is when we need to know by. I guess 3.30 is the close of business for this company. And I submit to the court that the affidavit of Evelyn Miller, who was the one taking those calls, when she says that, knowing what's being alleged here, that people call well into the evening, and then the next day they are allowed to come back or allowed even up to two weeks to come back, is showing how it's not consistently and uniformly applied, this 3.30 deadline. But see, that's where I'm worried about the lack of precision in what she says. If it's on day two that somebody calls at midnight, then you pick up the message the next morning and it's all fine. But if it's the last day, the company needs a cutoff. And I would submit that that cutoff isn't necessary as long as it's before 11.59, if the message is received, because it's a 24-hour operation. Why is it discriminatory, let me ask it this way, to decide that 3.30 is the cutoff if 3.30 applies to everybody, male, female, U.S. citizen, other people, you know, old, young. What's discriminatory about saying it's 3.30? The 3.30 isn't. What is happening here is that 3.30 deadline is being used as a pretext to effectuate the discriminatory intent. That Ms. Evelyn Miller testified to in her affidavit did exist from March. A lot of what she said in her affidavit, a lot of what Miller says in her affidavit strikes me as speculation and hearsay. Something she says may be factual, given her position. But, you know, the other people are out to get you, accusations, I suspect, don't really pass muster as evidence. And I would agree if that was the tenor of the affidavit. But the affidavit is more of someone who actually participated in these disciplinary actions in the layoff that was later rescinded. Evelyn Miller is the one who issued the letter in August to lay Ms. Annie Ding off. But then after looking at the collective bargaining agreement, had to rescind it. She participated in the March disciplinary action, and she participated in the grievance procedure with respect to not being able to exercise her contractual right to recall. The intent is stated, admitted by Evelyn Miller, who at the time, who is reflecting on her observations while she was an employee at Jeff Boat. So we have somebody who participated in the decisions, who issued the adverse employment actions, who's saying that we did these things, I did these things on behalf of Jeff Boat with discriminatory intent. And I would ask the court, I'd like to reserve six minutes if I still have that. You're using it right now, so you need to. I'd like to remain on my time for rebuttal. That would be fine. Mr. Stouffer. May it please the court. My name is Charles Stouffer. I'm here on behalf of Jeff Boat, LLC. And the district court correctly granted summary judgment in this case because there is no evidence, indirect or indirect, direct or indirect, justifying a reasonable inference of causation to support either the Section 1981 claim or the Title VII claim. What about the allegation from the Miller affidavit that Rick Schultheis had already prepared as of the morning of the last day, the letter telling Ms. Annie Dung that she wasn't eligible to come back and work at Jeff Boat? Your Honor, I don't see that as in any way justifying a finding of discriminatory or retaliatory intent. There's no evidence in that affidavit or anywhere else that that was outside of his usual course of business. Everyone agrees, it is undisputed, that the fifth day is the deadline for exercising recall rights. Does the record show that 3.30 p.m. is the formal end of the business day for this company? It does in Ronnie Waze's affidavit. He's the chief union steward. What he testifies is that the standard deadline, it isn't always 3.30 p.m. It's the close of business. I think a reasonable inference from his affidavit is that the close of business changes, but where it is specifically stated in Ronnie Waze's affidavit that 3.30 p.m. was the deadline, was the close of business, on January 30, 2012 was in the last paragraph of his affidavit where he alleges that the standard practice is to put the close of business as the deadline in the letter and that her grievance was denied because Jeff Boat properly enforced the deadline. So her husband calls when? About 5 o'clock or so? It's not too much later. I think there are two different allegations in the record. One is 6 p.m. and another is 6.30 p.m., but it's undisputed that it was after the close of business. In fact, her husband, who was also an employee at Jeff Boat, made the call after he got home from work, after his business day had come to an end. I want to address the questions that Your Honor asked Judge Wood of the appellant, and mainly is there any evidence that anyone was allowed to exercise their recall rights to actually be employed after? After close of business of the last day of the recall period. And there's absolutely no evidence of that at all, Your Honor. And the reason that matters is twofold. First, as the court suggested, there's no evidence of any disparate treatment, but I'd go even one step further than that. There's no evidence that the close of business deadline is even discretionary, that if Jeff Boat had wanted to make some sort of exception for a person outside of their protected class or Ms. Anidang herself, there's no evidence that they would have been able to. Why? Because they're bound by the collective bargaining agreement. The collective bargaining agreement doesn't have all these times recorded in it, does it? No, it doesn't, Your Honor. It just has a big management rights clause, which looks pretty standard. So if the company wants to give somebody a break, you're saying they can't? That's the position that Ronnie Ways takes in his affidavit. He's the union steward. He's the one who represents the rights of the workers at Jeff Boat, and he testified in his affidavit that when an employee fails to meet that deadline, the next employee on the recall list is the one that's entitled to recall rights. And that, yes, absolutely, it's not a discretionary issue. If they had made an exception for the appellant or for someone else, the next person on the recall list would have a justified grievance and a breach of the collective bargaining agreement claim. One thing that all of this discussion raises is an interesting one. First, the focus of the 1981 claim in the appellant's brief is about the interpretation of the contract. The interpretation of the CBA. The allegation is that simply based on an allegation, even without proof, but we'll assume there's proof of it, that a breach of contract, a breach of the CBA, automatically entitles them to relief under Section 1981. Not the case at all. In fact, the district court never actually formally interpreted the CBA in the case. What she found was there was no evidence that enforcing the deadline, which had been, without contradiction, enforced uniformly and consistently, wasn't pretextual, it wasn't a discriminatory reason, and it was a legitimate reason. That was the finding in the district court. And I would submit to the court that you don't even reach an issue about the collective bargaining agreement or about pretext unless there's first proof that similarly situated individuals outside of the protected class were treated more favorably than she was. There's a complete absence of that. So the whole discussion about pretext I don't think the court even needs to address. There's no question that although they've alleged that we can proceed under Section 1981 under the direct or the indirect method, it's clear as day that the way that they've presented this case is under the indirect method and they fail to establish even a prima facie case. So the issue of pretext doesn't even matter. I want to turn for a moment to the Title VII claim. The demotion? The demotion or reclassification from welder first class. It's a demotion. She earned less as a welder three. I don't disagree with the court's interpretation. So the only issue raised on appeal and in the brief is that Evelyn Miller's affidavit taken alone sustains the appellant's burden under Title VII, that there is no need for any additional evidence whatsoever to get past the summary judgment. I want to address the affidavit. First point out that Evelyn Miller is no longer employed at JetBoat. The statements in her affidavit are not somehow binding admissions on the company. She is no longer an authorized representative of the company. She has personal knowledge presumably of things that she observed when she was an employee. She's not a Rule 36 witness, but she is testifying that she observed animus on the part of Mr. Schulteis against Ms. Anitone, too many first aid visits, cried too much, things like that. I think the key word in the court's question there is that presumably she had knowledge as to what JetBoat was thinking or wasn't thinking. That's not the question here. The question is whether or not the facts actually alleged and actually proven by way of the affidavit established that she had personal knowledge of JetBoat's and the decision makers' reasoning, thinking, et cetera. How about this? She says there are many Caucasian and male welder first class workers that went to first aid due to overheating. Before and during the time period, Awokani Dung had to go to the first aid office, yet they experienced no demotion or requests. This sounds factual. I agree. And the district court didn't disregard that portion of the affidavit. What the district court found was there's not enough information for the court to do the McDonnell Douglas. Did the plaintiff ask for, presumably this first aid office keeps records. You'd have to for OSHA, I'm sure, of all these injuries. Yes. So did the plaintiff ask for records of the first aid office? She seemed to have a lot of injuries, and there have been some deaths also. Do you think the records would show whether her injuries in number or severity were higher than other people? Your Honor, what Miller says her injuries were just average. Your Honor, I see that I'm out of time. I have a moment to answer your question. Thank you. There was no formal request for documents until after the close of discovery. We filed a motion for a protective order given that discovery had closed when the request for records were first submitted. That motion was granted, and it has not been appealed. Thank you. Thank you, Your Honor. All right. Thank you very much. Anything further, Mr. White? With respect to the first aid visits, Ms. Ani Deng started working at Jeff Boat 2006. In reality, the record will show that only two visits that happened within, I believe, two weeks apart were at issue with respect to her being a first-class welder, and that's when Jim Kincaid, the president of the union, or the representative of the union, wrote a letter to HR saying that in his, I believe, 18-some odd years, he had never seen someone disqualified. In the summary judgment portion, as well as in their brief appellees, mentioned a mechanic that was also demoted for safety reasons. I would submit that's not a similarly situated individual. It wasn't because of overheating, and Evelyn Miller's affidavit states why she was overheated, was that there wasn't enough fans. Well, why didn't you ask for the records of the first aid office? Your Honor, I was on this with another counsel, and there was a discrepancy, and I missed it by one day. So the protective order was issued. With respect to the deadline, Evelyn Miller in her affidavit does contradict that the deadline was consistently and uniformly. And in the summary judgment, when the facts of error are contradicted, then the non-moving party should get the benefit of that doubt. So with respect to the things that were contradicted by Ms. Miller's affidavit, things that she has personal knowledge of, things that she observed, we would ask that you reverse the district court's ruling and first consider those in favor of the non-moving party and reverse the district court's ruling. And I also would ask that you, for example, use the standard of review that was adopted in Coleman, and I will follow up with this case, in that you used the standard of review that, one, that Ms. Annie Ding was in a protective class, she suffered adverse action, and that a rational jury could conclude that the employer took adverse action on account of her protected class, not for any non-invidious reason. Simply collapsing the Douglas standard into one. That's the Seventh Circuit's done. Thank you very much. Thank you very much, Ms. White. Thanks to both counsel. We'll take the case under advisement, and the court will be in recess.